**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**May 27, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2019AP730**

**STATE OF WISCONSIN**

Cir. Ct. No. 2013CF209

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

     PLAINTIFF-RESPONDENT,

  V.

MARIO EMMANUEL JAMES,

     DEFENDANT-APPELLANT.

     APPEAL from an order of the circuit court for Milwaukee County: T. CHRISTOPHER DEE, Judge. *Affirmed*.

     Before Brash, P.J., Dugan and Donald, JJ.

     **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Mario Emmanuel James, *pro se*, appeals the order denying his WIS. STAT. § 974.06 (2017-18)[1] motion without a hearing. James argues that his postconviction counsel was ineffective for not raising stronger claims and that he has newly discovered evidence. We disagree and affirm.

## I. BACKGROUND

¶2 This court has previously summarized the relevant facts of James's case. *See State v. James*, No. 2016AP981-CR, unpublished slip op. ¶¶2-9 (WI App Sept. 19, 2017). For purposes of this appeal, it suffices to state that a jury found James guilty of one count of armed robbery with the use of force as a party to a crime and one count of burglary, arming himself with a dangerous weapon while within the burglarized enclosure, as a party to a crime. This court affirmed the judgment of conviction and the order denying James's motion for postconviction relief. *See id.*, ¶1. The Wisconsin Supreme Court subsequently denied James's petition for review.

¶3 In the underlying WIS. STAT. § 974.06 motion, James argued that his postconviction counsel was ineffective for not arguing that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), and for not arguing that trial counsel was ineffective. James additionally argued that he had newly discovered evidence and

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

that he was entitled to a new trial in the interest of justice. The postconviction court denied James's motion without a hearing.[2]

¶4 This appeal follows. We provide additional background information as needed below.

## II. DISCUSSION

¶5 A defendant must "raise all grounds regarding postconviction relief in his or her original, supplemental or amended motion." *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 185, 517 N.W.2d 157 (1994); WIS. STAT. § 974.06. He or she is procedurally barred from using § 974.06 to raise new issues absent a sufficient reason for not raising the issues earlier. *See Escalona*, 185 Wis. 2d at 184-85; § 974.06(4).

¶6 We must decide whether James's postconviction motion is sufficient on its face to entitle him to an evidentiary hearing. A hearing is required "only when the movant states sufficient material facts that, if true, would entitle the defendant to relief." *State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433. Whether the motion alleges sufficient material facts is a question of law. *Id.*, ¶9. If it does, the circuit court must hold a hearing. *Id.* If it does not, or if it presents only conclusory allegations, or if the record conclusively shows the defendant is not entitled to relief, the decision to grant or deny a hearing is left to

---

[2] The Honorable T. Christopher Dee decided James's WIS. STAT. § 974.06 motion, and we refer to him as the postconviction court. The Honorable Jonathan D. Watts presided over the jury trial and sentenced James, and the Honorable Frederick C. Rosa denied James's WIS. STAT. § 974.02 postconviction motion. We refer to both as the circuit court.

the circuit court's discretion. ***Id.*** "We review a circuit court's discretionary decisions under the deferential erroneous exercise of discretion standard." ***Id.***

### A. Postconviction Counsel's Ineffectiveness

¶7 We begin with James's arguments that postconviction counsel was ineffective. To prove ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficiency prejudiced his defense. ***Strickland v. Washington***, 466 U.S. 668, 687 (1984). The defendant "must prevail on both parts of the test to be afforded relief." ***Allen***, 274 Wis. 2d 568, ¶26. We independently review "the legal questions of whether deficient performance has been established and whether it led to prejudice rising to a level undermining the reliability of the proceeding." ***State v. Roberson***, 2006 WI 80, ¶24, 292 Wis. 2d 280, 717 N.W.2d 111 (citation omitted). However, "[a] court need not address both components of this inquiry if the defendant does not make a sufficient showing on one." ***State v. Smith***, 2003 WI App 234, ¶15, 268 Wis. 2d 138, 671 N.W.2d 854.

¶8 Ineffective assistance of postconviction counsel may be a sufficient reason for failing to raise a claim in a prior motion. ***State v. Romero-Georgana***, 2014 WI 83, ¶36, 360 Wis. 2d 522, 849 N.W.2d 668. As part of showing deficient performance, "a defendant who alleges in a [WIS. STAT.] § 974.06 motion that his postconviction counsel was ineffective for failing to bring certain viable claims must demonstrate that the claims he wishes to bring are clearly stronger than the claims postconviction counsel actually brought." ***Id.***, ¶¶4, 45-46. However, we need not analyze whether James's new claims are clearly stronger than the ones previously raised. As set forth below, James has not demonstrated that he was prejudiced by postconviction counsel's alleged deficiencies.

4

### 1. Brady Violation

¶9      In his WIS. STAT. § 974.06 motion, James argued that postconviction counsel was ineffective for not arguing that the State violated *Brady* by failing to disclose his cell phone data.  To establish a *Brady* violation, a defendant must show that the State suppressed the evidence in question, that the impeachment or exculpatory evidence was favorable to him or her, and that the evidence was material to the determination of his or her guilt or punishment.  *State v. Rockette*, 2006 WI App 103, ¶39, 294 Wis. 2d 611, 718 N.W.2d 269.

¶10      According to James, "[t]he non[]disclosed cell phone data and report is favorable to [him] because the data retrieved from the phone, when analyzed … will conclude that [he] was in fact not present to have committed the crime[.]" However, at a pretrial hearing, James requested the cell phone data at issue.  In response, the State informed the circuit court that it had not had James's cell phone data analyzed so as to determine his location.  As summed up by the postconviction court in its decision, "the State did not have a chart establishing the whereabouts of [James]'s phone during the period in question because it never pursued an investigation into the matter."

¶11      Given that the evidence James sought did not exist, the State did not violate *Brady* by suppressing it.  Because this claim is meritless, James has not established prejudice by postconviction counsel's failure to pursue it.  *See State v. Simpson*, 185 Wis. 2d 772, 784, 519 N.W.2d 662 (Ct. App. 1994).

### 2. Alibi Defense and Cell Phone Data

¶12      James additionally argued that postconviction counsel was ineffective for not arguing that trial counsel was ineffective for failing to

investigate his alibi defense and for not pursuing the cell phone data. We address each argument in turn.

¶13    Regarding his alibi defense, James argued that if trial counsel had investigated, he would have discovered that James was in court "the entire morning of October 27, 2010," the day of the crime. James claimed that he told trial counsel to discuss this with the attorney who represented him during the October 27, 2010 court proceeding. Armed with the information relating to his presence in court, James asserted he would have had "strong proof" refuting co-actor Anthony Santiago's trial testimony about when James picked Santiago up that day.

¶14    The victim testified that the robbery occurred around noon on October 27, 2010. Santiago testified that James first came and picked him up "[e]arlier that day like around noon." James's motion does not allege facts that would establish an alibi. His morning court appearance does not account for his whereabouts at the time the crimes occurred. James has not established prejudice by postconviction counsel's failure to pursue this issue. *See Strickland*, 466 U.S. at 694 (establishing prejudice requires a showing that that but for counsel's unprofessional errors, there is a reasonable probability that the result of the trial would have been different).

¶15    Next, James argued that postconviction counsel was ineffective for not challenging trial counsel's unreasonable decision not to pursue exculpatory cell phone evidence.

¶16    During trial, the State presented expert testimony that two of James's co-actors made calls near the victim's home. If he was present at the crime, James argues that there would have been similar cell phone data for his phone. Had trial

counsel sought the missing cell phone data and used it effectively, James claimed that the jury would have had exculpatory factual evidence placing him in a different location at the time of the crime.

¶17    James's argument that his cell phone data was exculpatory is speculative.  Where a claim of ineffective assistance of counsel is based solely on speculation, it fails to meet the prejudice prong of *Strickland*.  *See State v. Leighton*, 2000 WI App 156, ¶38, 237 Wis. 2d 709, 616 N.W.2d 126 (explaining that "[a] defendant must base a challenge to counsel's representation on more than speculation"); *see also State v. Erickson*, 227 Wis. 2d 758, 774, 596 N.W.2d 749 (1999).

## B.  Newly Discovered Evidence

¶18    Next, James argued that he has newly discovered evidence that Santiago committed perjury during James's trial.  The test for reviewing a request for a new trial based on newly discovered evidence is well established:

> In order to set aside a judgment of conviction based on newly[ ]discovered evidence, the newly[ ]discovered evidence must be sufficient to establish that a defendant's conviction was a manifest injustice.  When moving for a new trial based on the allegation of newly[ ]discovered evidence, a defendant must prove:  (1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative.  If the defendant is able to prove all four of these criteria, then it must be determined whether a reasonable probability exists that had the jury heard the newly[ ]discovered evidence, it would have had a reasonable doubt as to the defendant's guilt.
>
> A reasonable probability of a different outcome exists if there is a reasonable probability that a jury, looking at both the [old evidence] and the [new evidence], would have a reasonable doubt as to the defendant's guilt.  A court reviewing newly[ ]discovered evidence should

> consider whether a jury would find that the newly[ ]discovered evidence had a sufficient impact on other evidence presented at trial that a jury would have a reasonable doubt as to the defendant's guilt. This latter determination is a question of law. Manifest injustice has been shown and a new trial must be ordered when: (1) the four factors of newly[ ]discovered evidence are established; and (2) a court determines that had a jury heard the newly[ ]discovered evidence, it would have had a reasonable doubt as to the defendant's guilt.

*State v. Plude*, 2008 WI 58, ¶¶32-33, 310 Wis. 2d 28, 750 N.W.2d 42 (internal quotations and citations omitted; brackets in *Plude*).

¶19 James argued that Santiago perjured himself when he testified about his plea agreement with the State. James claimed that he discovered, after reviewing Santiago's sentencing transcript, that Santiago lied to the jury when he said that he did not have an agreement with the State that linked his testimony against James to the State's sentencing recommendation.

¶20 During James's trial, the State asked Santiago about the agreement he entered into when he pled guilty to armed robbery and possessing firearms as a felon for his role in the underlying crimes. Santiago testified: "I believe the plea bargain was [twenty] in, ten out." When questioned further, Santiago explained that he was not promised anything to testify, but that he hoped the State would recommend a lesser sentence.

¶21 At Santiago's sentencing, the State confirmed that when Santiago pled guilty, its sentencing recommendation was twenty years' initial confinement, to be followed by ten years' extended supervision. The State additionally explained that after Santiago entered his plea, he agreed to testify against James at trial, "[a]nd the agreement was that he was testifying and agreeing to testify in the hopes of some consideration on his open case, being this case."

8

¶22    The State's explanation is consistent with Santiago's testimony. Consequently, James's claim that he has presented newly discovered evidence that Santiago falsely testified about the plea agreement he had with the State fails.

¶23    Next, James argued that Santiago lied to the jury about his military service. During James's trial, Santiago testified that he was in the military for six years and was in combat in Iraq for eighteen months. James claimed that he has newly discovered evidence in the form of a letter from the National Personnel Records Center, which states that Santiago was in the army reserves from November 2004 through May 2008 and that he performed "no active duty … other than for training purposes."

¶24    Even if we conclude that the letter satisfies the first four criteria of the newly discovered evidence test, James's claim still fails. During his testimony, Santiago admitted that he initially lied to the police and also admitted that he committed the underlying armed robbery. We are wholly unconvinced that a jury would have had a reasonable doubt as to James's guilt if Santiago had been impeached—and had his credibility been further challenged—with a letter suggesting that he embellished his military service. *See id.*, ¶33.

¶25    James does not renew the argument he made in his postconviction motion that reversal is appropriate in the interest of justice because the real controversy was not fully tried. *See **A.O. Smith Corp. v. Allstate Ins. Cos.***, 222 Wis. 2d 475, 493, 588 N.W.2d 285 (Ct. App. 1998) ("[W]hen a party fails to argue an issue in its main appeal brief, the appellate court may treat the issue as having been abandoned, even though the issue was presented to the [circuit] court."). Instead, on appeal, he argues that we can use our authority under WIS. STAT.

§ 752.35 to order a new trial on grounds that his newly discovered evidence claim establishes a manifest injustice.

¶26     WISCONSIN STAT. § 752.35, however, provides that we may order a new trial in the interest of justice only on two grounds: "that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried[.]" Because James has not argued that either of these grounds apply and because we have already concluded that his evidence does not satisfy the newly discovered evidence test, this claim fails.

¶27     Accordingly, we affirm the order of the postconviction court denying James's WIS. STAT. § 974.06 motion without a hearing.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.